UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS ECKSTEIN, | CASE NO. C21-257 MJP |
| Plaintiff, | ORDER GRANTING MOTION TO COMPEL ARBITRATION |
| v. | |
| EAST COAST FACILITIES INC, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Compel Arbitration. (Dkt. No. 11.) Having reviewed the Motion, Plaintiff's Opposition (Dkt. No. 14), the Reply (Dkt. No. 18), and all relevant materials filed by the Parties, the Court GRANTS the Motion and DISMISSES this action.

## BACKGROUND

Plaintiff Nicholas Eckstein was fired from his job as an associate forecaster (meteorologist) at True Weather LLC, an affiliate of East Coast Facilities Inc. Eckstein has filed suit against East Coast, True Weather, and Michael Defino (the Chief Meteorologist of True

1   Weather), pursuing disability discrimination claims under the Americans with Disabilities Act

2   and the Washington Law Against Discrimination. Eckstein also pursues claims under the

3   Washington Paid Medical Leave Act (RCW Title 50A), the Family Medical Leave Act (29

4   U.S.C. § 2601, et seq.), the Washington Minimum Wage Act (RCW 49.46), Washington Wage

5   Payment Act (RCW 49.48) and the Washington Wage Rebate Act (RCW 49.52). Defendants

6   have moved to compel arbitration, asserting that Eckstein's employment agreement requires it.

7   Eckstein opposes on the grounds that the arbitration provision is unconscionable and therefore

8   unenforceable. The Court reviews the facts related to Eckstein's employment and the arbitration

9   provisions put at issue by the Motion.

10   **A.**     **Employment-Related Facts**

11         In December 2018, Eckstein was hired to work for True Weather and East Coast. At the

12   time of his hire, Eckstein was living in Oregon and was to provide weather forecasts for the

13   Northwest and Southwest regions. (Eckstein Decl. ¶ 3 (Dkt. No. 16).) Both East Coast and True

14   Weather are located in Pennsylvania, though East Coast is incorporated under the laws of

15   Delaware and True Weather is a Pennsylvania limited liability company. Eckstein was hired by

16   Defino who lives in Pennsylvania.

17         The parties dispute the precise date of Eckstein's hiring. Eckstein argues that he was

18   "formally offered the position on December 6, 2018" and that he accepted the offer on December

19   10, 2018 while also demanding a higher salary. (Eckstein Decl. ¶ 3.) This appears consistent with

20   the email communications between Eckstein and Defino, which show Eckstein accepted the offer

21   on the 10th while asking for a higher salary, and that he began work on the 27th of December

22   2018. (Ex. A. to Eckstein Decl. (Dkt. No. 16 at 12).) Defino does not necessarily contradict this

23   assertion, though he maintains that the job offer was conditional on Eckstein completing various

24

1   paperwork, including executing an employment agreement. (Defino Decl. ¶ 3.) It is undisputed

2   that on December 26, 2018 East Coast provided Eckstein with the Employment Agreement.

3   After its receipt, Eckstein attempted to negotiate changes to the non-solicitation and noncompete

4   provisions in the Employment Agreement. (Defino Decl. ¶ 5; Eckstein Decl. ¶ 4.) Defino and

5   East Coast rejected those proposed changes, stating that they were non-negotiable. (Id.) Eckstein

6   made no objection to the arbitration provisions in the Employment Agreement.

7           When Eckstein negotiated the job and started to work, he lived in Oregon, while working

8   part time in Washington at Pierce College in Lakewood, Washington. At no time during the

9   negotiations or his tenure did Eckstein work, travel to, or reside in Pennsylvania. (Eckstein Decl.

10  ¶ 3.) In March 2019, Eckstein moved to Washington to teach at Pierce College. (Id. ¶ 6.)

11  Eckstein then moved temporarily to Oregon in March 2020 and stayed for a prolonged period

12  while maintaining his Washington residency. (Id.)

13          In September 2019, Eckstein began to suffer medical episodes later diagnosed as

14  epileptic seizures. (Eckstein Decl. ¶ 7.) In October 2019 he was hospitalized for three days and

15  had other episodes in November and December 2019. (Id.) He then took approved FMLA leave

16  from February 3, 2020 to March 2, 2020. (Id.) He returned to work on March 4, 2020, but had

17  another seizure. (Id.) East Coast then terminated Eckstein on March 27, 2020 and did not pay

18  him for any of the work he performed after he returned to work on the theory it had overpaid him

19  while he was on FMLA leave. (Id. ¶¶ 8-9.) Defendants claim that they were forced to lay off

20  Eckstein because they lost their primary client for whom Eckstein's work was performed and

21  other market conditions. (Defino Decl. ¶ 7.)

22

23

24

**B.      Arbitration-Related Facts**

Prior to filing suit, the parties attempted to mediate this dispute, as required by the Employment Agreement. The mediation failed. The Employment Agreement also contains an arbitration provision, which the Court reviews given the issues presented by the parties.

First, the Employment Agreement states the arbitrator "shall apply applicable Commonwealth and/or federal substantive law to determine liability and damages regarding all claims to be arbitrated." (Employment Agreement § 9.4.4.) Second, the Employment Agreement states that the arbitrator "shall have the authority to determine what constitutes reasonable discovery." (Id. § 9.4.4.) But the arbitrator "shall apply the Federal rules of evidence to the proceeding." (Id.) Third, the Employment Agreement states that "the parties shall each bear their own costs and attorneys' fees in any arbitration proceeding." (Id. § 9.4.6.) Fourth, the Employment Agreement states that "[e]ither party may seek to confirm and/or enforce the arbitrator's award in any competent court of law . . . [h]owever, there shall be no right to appeal the arbitration award." (Id. § 9.4.8.)

Separately, Eckstein takes issues with two of the AAA Arbitration rules that apply. First, Eckstein flags the following rule as to discovery:

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

> The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

(Employment Arbitration Rules and Mediation Procedures No. 9 (Ex. C. to Norgaard Decl.).)

Second, Eckstein flags the rule about confidentiality:

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

(Id., Arbitration Rule No. 23.)

## ANALYSIS

Defendants' Motion requires an analysis of the choice of law and the validity and enforceability of the arbitration clause under the applicable law. The Court reviews those issues and then assesses Defendants' request for sanctions and whether to dismiss or stay this action.

**A.    Choice of Law**

Although the Section 10 of the Employment Agreement states that Pennsylvania law applies, the Court is obliged to perform an analysis of the correct law to be applied in determining the validity of the arbitration clause.

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply [and i]t makes this determination using the choice-of-law rules of the forum state. . . ." Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

Under Washington law, courts "generally enforce contract choice of law provisions with certain exceptions." McKee v. AT & T Corp., 164 Wn.2d 372, 384 (2008). The Court will "disregard the contract provision and apply Washington law if, [1] without the provision,

Washington law would apply; [2] if the chosen state's law violates a fundamental public policy of Washington; and [3] if Washington's interest in the determination of the issue materially outweighs the chosen state's interest." Id. (citation omitted). The Court will enforce a choice of law provision unless all three of these conditions are met. Id.

1.    **Factor One: Would Washington law apply?**

To assess the first condition, the Court applies a "most significant relationship" test from Restatement (Second) of Conflict of Laws § 188. See McKee, 164 Wn.2d at 384. Under this test, "Courts weigh the relative importance to the particular issue of (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance of the contract, (d) the location of the subject matter of the contract, and (e) the domicile, residence, or place of incorporation of the parties." Id. at 384-85.

The factors here weigh in favor of Pennsylvania, not Washington. First, the place of contracting was between Eckstein in Oregon and Defino/East Coast in Pennsylvania. There was no tie to Washington. Second, the place of negotiation was split between Oregon and Pennsylvania. Third, the place of performance was Eckstein's remote location in Oregon and Washington. Fourth, the subject matter of the contract was for Eckstein to provide of meteorological reports to Defino and True Weather in Pennsylvania for the company's use from its headquarters in Pennsylvania. It also required Eckstein to produce work remotely from his locations in Oregon and Washington. Fifth, the location of the parties at the time of contracting was Oregon and Pennsylvania. On balance, Pennsylvania has the most significant and consistent relationship to the parties and subject matter of the agreement, with Oregon as close second-place. Eckstein's ties to Washington are attenuated for purposes of this analysis, given that he did not reside there at the time of contract negotiation or the commencement of his job and only

1    spent some of his time residing there while he was employed. Eckstein has not satisfied this

2    factor, which compels the Court to apply Pennsylvania law as provided in the Employment

3    Agreement.

4            **2.**         **Factor Two: Washington's fundamental policy**

5            Given the Court's analysis on the first factor, it need not consider the second. But for

6    completeness, the Court reviews it.

7            The primary issue to resolve is whether use of Pennsylvania's law on the enforceability

8    of the arbitration provision would violate a fundamental policy of Washington State. On this

9    point Eckstein has identified what appears to be a higher burden of proof under Pennsylvania law

10   than Washington law in proving the unconscionability of an arbitration provision. Under

11   Washington law one can prove unconscionability either because the arbitration clause is

12   procedurally or substantively unconscionable. Gandee v. LDL Freedom Enters., Inc., 176 Wn.2d

13   598, 603 (2013). But under Pennsylvania law, one must prove both substantive and procedural

14   unconscionability, though under a sliding scale. Salley v. Option One Mortg. Corp., 592 Pa. 323,

15   331, 340 n.12 (2007). Application of Pennsylvania law would thus undermine Washington's

16   fundamental policy in favor of protecting against enforcement of unconscionable arbitration

17   agreements even if they are only procedurally or substantively unconscionable.

18           Eckstein also argues that there is a fundamental policy in Washington to allow a plaintiff

19   to recover attorneys' fees and costs, but they are only discretionary in Pennsylvania. But

20   Eckstein confuses the inquiry. This factor in the choice of law analysis concerns only whether

21   application of Pennsylvania law on the unconscionability of the arbitration clause would violate

22   a fundamental policy of Washington law. Whether Eckstein may be entitled to fees and costs on

23   the substantive claims he pursues is not relevant to this inquiry. And as Defendants concede,

24

1    Eckstein can still pursue his Washington claims even if Pennsylvania law applies to the gateway

2    issue of the enforcement of the arbitration clause. (Reply at 5.)

3           **3.     Factor Three: Washington's interest in this case**

4           Eckstein has failed to persuade the Court that Washington has a materially greater

5    interest in the outcome and subject matter of this litigation than Pennsylvania. Eckstein briefly

6    states that Washington's interest in protecting workers outweighs Pennsylvania's interest. But

7    Eckstein provides no meaningful analysis or citation to authority. The Court is left without

8    sufficient reason to believe this factor favors Eckstein.

9                                    *       *       *

10          Because Eckstein has not satisfied all three factors of the choice of law analysis, the

11   Court applies Pennsylvania law to determine the enforceability of the arbitration clause.

12   **B.     Enforceability of Arbitration Clause**

13          There is no dispute between the parties that a valid contract was formed and that the

14   Employment Agreement is binding. Instead, the parties dispute whether the arbitration clause is

15   unconscionable and therefore unenforceable.

16          Under Pennsylvania law, Eckstein bears the burden of showing both substantive and

17   procedural unconscionability. Salley, 592 Pa. at 331. "[A] contract or term is unconscionable,

18   and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the

19   challenged provision and the provision unreasonably favors the party asserting it." Id.

20   "[P]rocedural and substantive unconscionability are generally assessed according to a sliding-

21   scale approach (for example, where the procedural unconscionability is very high, a lesser degree

22   of substantive unconscionability may be required)." Id. at 340 n.12 (citing Delta Funding Corp.

23   v. Harris, 912 A.2d 104, 111 (N.J. 2006)).

24

ORDER GRANTING MOTION TO COMPEL ARBITRATION - 8

1          **1.      Procedural Unconscionability**

2          Eckstein fails to show procedural unconscionability. "Procedural unconscionability

3   pertains to the process by which an agreement is reached and the form of an agreement,

4   including the use therein of fine print and convoluted or unclear language." Harris v. Green Tree

5   Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (considering Pennsylvania law). The question is

6   whether the party lacked a meaningful choice. See id.; Salley, 592 Pa. at 331. At most, Eckstein

7   has demonstrated that the contract was presented on a take-it-or-leave-it basis and he was unable

8   to negotiate its terms. But "merely because a contract is one of adhesion does not render it

9   unconscionable and unenforceable as a matter of law." Salley, 592 Pa. at 344. Eckstein fails to

10  show that the Employment Agreement buried the arbitration provision in fine print or that he was

11  misled as to its existence. Eckstein read the document and challenged its nondisclosure and

12  noncompete provisions. This cuts against his argument that the terms about arbitration were

13  hidden. While Eckstein has certainly shown the agreement was nonnegotiable, he has not

14  demonstrated that Defendants unfairly hid or buried the arbitration provision in the fine print.

15  The Court is not convinced that Eckstein lacked a meaningful choice to enter into the

16  Employment Agreement and finds an absence of procedural unconscionability.

17         Under Pennsylvania law this determination alone defeats Eckstein's position because he

18  must prove both procedural and substantive unconscionability. But for completeness, the Court

19  analyzes his arguments about substantive unconscionability.

20         **2.      Substantive Unconscionability**

21         Eckstein makes five arguments as to substantive unconscionability. Of these, only one

22  has merit.

23

24

First, Eckstein argues that the arbitration clause's requirement that each party bear its own costs is unconscionable because it deprives him of his right to fees and costs available to him under Washington law. The Employment Agreement states: "The parties shall each bear their own costs and attorneys' fees in any arbitration proceeding." (Employment Agreement § 9.4.6.) Under Pennsylvania law, "[P]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." Quillion v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 230–31 (3d Cir. 2012) (citing Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 216 (3d Cir. 2003)). Read in isolation, the provision Eckstein cites would appear to be unconscionable. But as Defendants point out, this limitation on fees is balanced by another provision which states that the arbitrator is "authorized to award only those remedies in law and equity which are requested by the parties and allowed by law." (Employment Agreement § 9.4.5.) Read together, and as Defendants concede, Eckstein is entitled to request fees and costs as permitted by the claims he pursues under Washington and federal law.

Second, Eckstein argues that a confidentiality provision is substantively unconscionable. The Court is not convinced. The provision itself is not in the body of the Employment Agreement, but in the referenced AAA Arbitration rules. The rule states that "The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary." (Arbitration Rule No. 23.) Eckstein argues that this is impermissible only under Washington law and makes no mention of Pennsylvania law that might apply. But even considering this argument under Washington law, the case Eckstein relies on is distinguishable.

1    (See Pl. Opp at 18 (citing McKee).) In McKee, the Court found the confidentiality provision in

2    the agreement itself unconscionable because it was a blanket provision that, in a consumer

3    context, made it impossible for consumers to learn of patterns of misconduct engaged in by the

4    defendant. Here, this is not a consumer case and there is no evidence that other employees of

5    East Coast and/or True Weather would be deprived of seeing the results of a challenge to a

6    pattern of misconduct. And the confidentiality provision is not absolute—the parties can agree

7    not to keep materials confidential and they cannot be kept confidential if doing so is contrary to

8    law. The Court does not find this term unconscionable.

9            Third, Eckstein argues that the discovery procedures are unfair because it gives too much

10   discretion to the arbitrator. The Court disagrees. The Supreme Court has noted that limitations on

11   discovery are to be expected in an arbitration agreement. See Gilmer v. Interstate/Johnson Lane

12   Corp., 500 U.S. 20, 31 (1991) ("Although those procedures might not be as extensive as in the

13   federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review

14   of the courtroom for the simplicity, informality, and expedition of arbitration.") That said,

15   discovery procedures which are one-sided or which deprive a party of a "fair opportunity to

16   present their claims" can be unconscionable. Id. Here, the discovery procedures are not one-sided

17   and there is nothing in the AAA rules to suggest that the arbitrator will unfairly favor

18   Defendants. The Court does not find the provision unconscionable.

19           Fourth, Eckstein argues that the Employment Agreement unconscionably requires waiver

20   of any appeals. Defendants concede that the provision cannot be enforced to deprive Eckstein of

21   his right to appeal as set forth under the Federal Arbitration Act. This is correct—a non-appeal

22   provision is read to still allow for appeals under the FAA. See In re Wal-Mart Wage and Hour

23   Employment Practices Litig., 737 F.3d 1262, 1268 (9th Cir. 2013). This provision is not so much

24

1    unconscionable as ineffective and, below, the Court will consider whether it invalidates the

2    entire arbitration provision or should simply be severed.

3         Fifth, Eckstein argues that the Employment Agreement improperly bars him from

4    bringing claims under Washington law given its provision that the arbitrator may only apply

5    "Commonwealth" or federal law. If Eckstein was correct, this would be unconscionable. But

6    Defendants concede that Eckstein can pursue claims under Washington law because the

7    Employment Agreement allows the arbitrator to apply federal substantive law and "[u]nder the

8    Erie doctrine, federal substantive law, of course, permits the application of state substantive law

9    to resolve state law claims." (Reply at 5.) While the Employment Agreement is hardly a model

10   of clarity on this issue, the Court finds Defendants' concession and position resolves the issue.

11   Because Eckstein may bring his Washington claims and seek attorneys' fees and costs if he

12   prevails in the arbitration, the Court does not find this provision unconscionable.

13        While Eckstein has shown one unconscionable term, the Court determines that it is

14   severable from the Employment Agreement. Under Pennsylvania law, "[t]he severability of a

15   contract may be apparent from its explicit language." Wert v. Manorcare of Carlisle PA, LLC,

16   633 Pa. 260, 279, 124 A.3d 1248, 1260 (2015). The Court cannot re-write an agreement but

17   "[a]rbitration clauses are no more or less valid, enforceable, or irrevocable than any other

18   contractual provision." Id. Here, the Employment Agreement states that any term can be severed

19   if it "is determined to be invalid or unenforceable" and that the "remainder of the Agreement will

20   not be affected thereby." (Employment Agreement § 12.) The unconscionable appeal provision is

21   not so integral to the arbitration agreement as to be inseverable. It is but one limited provision in

22   the agreement which contains many other provisions that do not appear to be unconscionable

23   under Pennsylvania law. Its removal does not substantively change the terms or tenor of the

24

1    agreement, and the Court therefore severs it and otherwise finds the arbitration agreement

2    enforceable.

3    **C.      Terms/Sanctions**

4         Defendants ask for the Court to impose terms on Eckstein for his refusal to submit to

5    arbitration. This request has no merit. The Employment Agreement expressly reserved the issue

6    of arbitrability for the courts: "either party may request provisional relief from a court of

7    competent jurisdiction." (Employment Agreement § 9.4.) Even if that provision was absent,

8    Eckstein was entitled to litigate the issue of arbitrability and he presented close, colorable

9    questions for the Court to consider on whether the arbitration clause at issue is enforceable.

10   Additionally, Defendants failed to make any argument in the opening brief as to why terms

11   would be appropriate. Defendants instead attempted to "reserve" the issue for the reply. But the

12   moving party must present all arguments in their opening brief to obtain any relief sought. A

13   party cannot merely "reserve" the opportunity to present arguments for the first time in reply.

14   The Court denies this request.

15   **D.      Dismissal**

16        Based on its assessment of the issues and the nature of the matter, the Court finds that

17   dismissal of this matter to be the appropriate relief, rather than a stay. Eckstein will still possess

18   his appellate rights under the FAA, but the Court does not find that this compels entering a stay

19   pending arbitration.

20                                   **CONCLUSION**

21        The Court finds that by applying Pennsylvania law and assessing the specific provisions

22   of the Employment Agreement, Eckstein must arbitrate his claims. That said, Eckstein will be

23   permitted to pursue his state and federal law claims and obtain all relief under those laws to

24

1   which he is entitled, including attorneys' fees and costs. And Eckstein shall be entitled to pursue

2   his appellate rights under the FAA. The Court therefore GRANTS the Motion, compels the

3   parties to arbitrate Eckstein's claims consistent with the Employment Agreement and this Order,

4   and DISMISSES this action.

5       The clerk is ordered to provide copies of this order to all counsel.

6       Dated July 26, 2021.

7

8       Marsha J. Pechman
        United States Senior District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24